UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JOE TURNER, | ) |
| | ) |
| Petitioner, | ) |
| | ) No. 3:18-CV-00026-JRG-DCP |
| v. | ) |
| | ) |
| RANDY LEE, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by pro se prisoner Joe Turner ("Petitioner"), challenging the constitutionality of his confinement under a state court judgment of conviction of two counts of aggravated rape, one count of especially aggravated kidnapping, and one count of aggravated assault [Doc. 1]. Respondent filed a response in opposition to Petitioner's pleading, as well as a copy of the state record [Docs. 5, 7]. For the reasons set forth below, Petitioner's § 2254 petition [Doc. 1] will be **DENIED** and this action will be **DISMISSED**.

**I.     PROCEDURAL HISTORY**

A Knox County jury convicted Petitioner of two counts of aggravated rape, one count of especially aggravated kidnapping, three counts of aggravated kidnapping, and one count of aggravated assault. The trial court imposed an effective sentence of 100 years. On appeal, the Tennessee Court of Appeals ("TCCA") vacated the kidnapping convictions and remanded for entry of a judgment of especially aggravated kidnapping reflecting merger of the remaining kidnapping convictions. The TCCA affirmed the judgment and sentence in all other respects. The Tennessee Supreme Court ("TSC") denied Petitioner's applications for permission to appeal on

February 16, 2011, and August 26, 2011. *See State v. Turner*, No. E2009–00069–CCA–R3–CD, 2010 WL 3706434 (Tenn. Crim. App. Sept. 22, 2010), *perm. app. denied* (Tenn. Feb. 16, 2011), *perm. app. denied* (Tenn. Aug. 26, 2011).

On December 8, 2011, Petitioner filed a timely petition for post-conviction relief. Appointed counsel filed an amended petition. Following an evidentiary hearing, the post-conviction court denied relief. On appeal, the TCCA affirmed the denial of the post-conviction petition and thereafter, the TSC denied discretionary review. *See Turner v. State*, No. E2015–00849–CCA–R3–PC, 2017 WL 928680, at *1 (Tenn. Crim. App. Mar. 8, 2017).

On January 22, 2018, Petitioner filed a timely pro se petition for writ of habeas corpus [Doc. 1]. This matter is now ripe for the Court's review.

## II. FACTUAL BACKGROUND

The facts of this case have been previously summarized by the TCCA as follows:

[T]he victim, A.T., testified that at the time of the offenses she was addicted to drugs and alcohol but that she had been "sober" for more than a year. The victim said that she met the [Petitioner] on Keith Avenue one to one and one-half months prior to the instant offenses. She and the [Petitioner] started a relationship, and they occasionally used crack cocaine and alcohol.

In August 2006, the victim was hired to clean rooms at the Best Value Inn in exchange for room and board. The [Petitioner] stayed with her. He promised to look for employment; however, after job searching, he often came back to the room drunk or with crack cocaine.

The victim testified that at times the [Petitioner] was violent. He took her belongings and threatened to burn them. He would also "strip [her]" so that she was unable to leave. He frequently grabbed her arms and physically restrained her. She said she did not want to be with the [Petitioner], but she was afraid of him.

The victim worked at the motel for one week before her job was terminated on August 16, 2006. The night before she lost her job, the [Petitioner] kept the victim awake until 3:00 a.m. "ranting and raving," making it difficult for her to work the next day. The victim said that on August 16, the [Petitioner] left to look for a job, and she began cleaning rooms. Her boss called her downstairs and told her he had to "let her go." The victim asked to be given a reason for her dismissal, and her

boss responded that the [Petitioner] had been harassing the guests. The victim asked if she could continue to stay and work at the motel if she evicted the [Petitioner], but her boss told her that they both needed to leave. The victim left the [Petitioner's] belongings at the motel because she was unable to carry them. She told the motel clerk that the [Petitioner] would return later for his belongings.

At 5:00 or 5:30 p.m., after arranging to stay with a woman who lived on Keith Avenue, the victim went to a nearby convenience store. While she was there, the [Petitioner] confronted her. He was angry and cursing because she had left his belongings at the motel. She told him that the relationship was not working and that his behavior had cost her a job and a place to stay. The victim left the store and went to the house where she was staying.

At 10:00 or 11:00 p.m., the victim returned to the store and bought a quart of beer. When she walked out of the store, the [Petitioner] grabbed the "neck area" of her shirt with one hand. In his other hand, he had an open Buck knife. The [Petitioner] repeatedly called the victim a "bitch." He held the knife to her throat, threatened to kill her, and dragged her to a dirt pile behind the store. The [Petitioner] told her that "no one else was going to have [her]" and threatened to "rape [her] dead body." Hoping to get the [Petitioner] to stop, the victim told him that God was watching them. The [Petitioner] responded by hitting both sides of her head and pushing her onto the dirt pile. The victim said the [Petitioner] was angrier than she had ever seen him.

The [Petitioner] ordered the victim to remove her clothes, and she reluctantly complied. She pled with the [Petitioner] to let her go. He used profanity, strangled her, and kept the knife near her face and neck. The victim briefly lost consciousness while the [Petitioner] strangled her. After the victim's clothes were removed, the [Petitioner] penetrated her vagina with his penis then ejaculated on her face. The [Petitioner] laughed, kicked dirt on her, and ordered her to get dressed.

The [Petitioner] then forced the victim to go to an abandoned house which was dark and smelled of urine. The [Petitioner] pushed the knife into her neck and ordered the victim to lie on a blue couch that was in the house. When she complied, he penetrated her again.

Afterward, the [Petitioner] appeared to be asleep. When the victim saw that it was getting light outside, she squirmed out from under the [Petitioner] and stood. She told him she would not tell police about the rapes if he allowed her to leave. The [Petitioner] allowed her to leave, but he followed her out of the house. She found a telephone and called 911. The victim said she was disoriented, confused, weak, and had trouble breathing because of the strangulation.

An ambulance arrived and transported the victim to Baptist Hospital where she was examined. Later, she went to an out-of-county domestic violence shelter because

she was afraid of the [Petitioner]. The victim stated that the ordeal lasted from 10:30 p.m. on August 16, 2006, until 7:30 a.m. on August 17, 2006.

The victim said that the [Petitioner] always carried a knife and that he liked to "flip" knives at odd times, such as when he watched television. Because of the strangulation, she had trouble swallowing for a month. She said that she had bruises and scrapes and that she healed slowly. She also stated that "mentally those scars are a lot deeper." She acknowledged that she had previously had consensual sex with the [Petitioner] but maintained that she did not consent on the night of the offenses.

Ginger Evans testified that on August 17, 2006, she was called to Baptist Hospital Emergency Department to perform a sexual assault forensic examination on the victim. When Evans first saw the victim, she was curled in a "fetal position" on an examination table. She was crying and was clearly upset. The victim told Evans that she was scared, and she asked Evans to find her a safe place to stay.

The victim told Evans that she had been sexually assaulted and strangled by the [Petitioner]. Evans said that the victim complained of pain and that she had marks and scratches on her body. Evans stated that the victim had broken blood vessels in her eyes and significant bruises on her neck, ears, and chin [,] which were consistent with strangling. Evans found dirt in various places on the victim's body, including her genital area, which could have been consistent with the victim being thrown on a pile of dirt. Additionally, Evans collected swabs from the victim's face and genital area. When she examined the victim's genital area, she saw redness and excoriation, which she described as a tearing away of the top layers of skin where the victim's legs connected with her pubic bone.

Kimberly Bryant, a Tennessee Bureau of Investigation [ (TBI) ] forensic scientist, testified that the swab from the victim's face revealed the presence of limited spermatozoa. She said that the [Petitioner's] genetic material was present in the swab.

Knoxville Police Department Investigator Steve Sill testified that he was working in the Violent Crimes Unit around 7:30 a.m. on August 17, 2006, when he received a call to respond to Baptist Hospital to investigate a rape complaint. When he arrived at the hospital, the victim was "very emotional, scared, upset. Obviously in some type of a crisis." Investigator Sill said the victim had bruises on her face, neck, arms, and legs, which corroborated her story.

Later that day, Investigator Sill went to the convenience store where the offenses occurred. He noticed a depression on the dirt pile behind the store. He walked the neighborhood and found an abandoned blue house and couch, which matched the victim's descriptions.

*State v. Turner*, 2010 WL 3706434, at *1–3 (footnote omitted).

## III.     STANDARD OF REVIEW

The Court must review Petitioner's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; *Reed v. Farley*, 512 U.S. 339, 347 (1994). Congress has mandated that federal courts review state court adjudications on the merits of such claims using a "highly deferential" standard of review. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Under this deferential standard, this Court is bound to accept the state court's findings of fact as true unless a petitioner presents "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1)(providing that "a determination of a factual issue by a State court shall be presumed to be correct" unless the petitioner rebuts that presumption with clear and convincing evidence); *see Seymour v. Walker*, 224 F.3d 542, 551-52 (6th Cir. 2000). Additionally, this Court may not grant habeas relief to a state prisoner unless the state court's decision on the merits of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)(defining clearly established federal law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"). A decision is "contrary

to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state-court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

The standards set forth in the AEDPA's are "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). Ultimately, the AEDPA's highly deferential standard requires this Court to give the rulings of the state courts "the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

However, before a federal court may review a federal claim raised in a habeas petition, it must first determine whether the petitioner has exhausted the remedies available to him in state court. *See* 28 U.S.C. § 2254(b)(1). If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis of a federal habeas petition. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

The exhaustion "requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Wilson v. Mitchell*, 498 F.3d 491, 498–99 (6th Cir. 2007) (quoting *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001)). Under Tennessee Supreme Court Rule 39, a Tennessee prisoner exhausts a claim by raising it before the TCCA. *See Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003). A federal court will not review claims that were not entertained by the state court due to the petitioner's failure to (1) raise those claims in the state courts while state remedies were

available, or (2) comply with a state procedural rule that prevented the state courts from reaching the merits of the claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

A petitioner who fails to raise his federal claim in the state courts and who is now barred by a state procedural rule from returning with the claim to those courts has committed a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A procedural default forecloses federal habeas review, unless the petitioner can show cause to excuse the failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Id*. at 750.

## IV. PETITIONER'S ALLEGATIONS

Petitioner raises two claims for relief in his § 2254 habeas corpus petition [Doc. 1]. First, Petitioner claims that his appellate counsel provided ineffective assistance on direct appeal by failing to raise the issue that the trial court erred in excluding DNA evidence under Tennessee's rape shield rule [*Id*. at 4]. He also claims that "the length and consecutive nature" of his sentence was imposed in violation of *Blakely v. Washington*, 542 U.S. 296 (2004) [*Id*. at 5-6].

Respondent asserts that Petitioner is not entitled to habeas corpus relief from his state court judgments and his petition should be denied [Doc. 7]. Respondent argues that the state court's decision that appellate counsel did not provide ineffective assistance on direct appeal was not an unreasonable application of Supreme Court precedent [*Id*. at 2]. Likewise, Respondent further argues that the state court's decision that Petitioner's sentence was not imposed in violation of *Blakely* was not contrary to clearly-established Supreme Court precedent [*Id*.].

### A. INEFFECTIVE ASSISTANCE OF COUNSEL
#### 1. Rule of Law

7

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. Under the Sixth Amendment, a defendant has a constitutional right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id.*

Under the first prong of the test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). A court considering counsel's performance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

The second prong requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In order to prevail on a claim of prejudice, a petitioner must show "there is a reasonable probability that, absent the errors, the factfinder would have had

8

a reasonable doubt respecting guilt." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. While both prongs must be established to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

Any § 2254(d)(1) claim reviewed under *Strickland* is "doubly deferential", affording both the state court and the defense attorney the benefit of the doubt. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Further, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

2.  **Analysis**

Prior to trial, the State disclosed the results of a serology report, which identified the presence of DNA that did not belong to Petitioner in the victim's vagina [Doc. 5-1 at 171, Doc. 5-18 at 938-40]. On the day of trial, the parties disagreed about whether that evidence was admissible under Rule 412 [Doc. 5-2 at 210-15, 217-22]. The trial court ruled that the DNA evidence was inadmissible, unless the State opened the door by implying that Petitioner's semen was discovered inside the victim [Doc. 5-2 at 222-23]. Although trial counsel raised the issue before trial and again during the motion for new trial, appellate counsel did not raise the issue on direct appeal [Docs. 5-8]. Petitioner claims that his appellate counsel provided ineffective assistance by failing to raise this issue [Doc. 1 at 4, 16]. Petitioner opined that this information would have made a difference in the jury's verdict and in the sentences received [*Id.*].

The TCCA affirmed the trial court's conclusion that appellate counsel did not provide ineffective assistance because the evidence was inadmissible under Tennessee Rule of Evidence 412. Specifically, the TCCA addressed the issue as follows:

> "A petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful." *Michael Fields v. State*, No. E2015–01850–CCA–R3–PC, 2016 WL 5543259, at *8 (Tenn. Crim. App. at Knoxville, Sept. 29, 2016) (citing *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000)), perm. to appeal denied, (Tenn., Jan. 19, 2017).
>
> The Petitioner makes a general complaint that appellate counsel should have challenged the trial court's exclusion of evidence that the male DNA detected on the victim's vaginal swab did not match the Petitioner's DNA. The State maintains that appellate counsel's decision to omit the issue was based on "sound professional judgment" because the evidence was inadmissible under the "rape shield law." We agree with the State.
>
> Our supreme court has explained that "[r]ape shield laws were adopted in response to anachronistic and sexist views that a woman who had sexual relations in the past was more likely to have consented to sexual relations with a specific criminal defendant." *State v. Sheline*, 955 S.W.2d 42, 44 (Tenn. 1997). The rape shield laws were designed to prevent "the trial of the rape victim based on her past sexual conduct." *Id*. Tennessee's rape shield rule, Tennessee Rule of Evidence 412, "limits the admissibility of evidence about the prior sexual behavior of a victim of a sexual offense[ ] and establishes procedures for determining when evidence is admissible." *Id*.; see also *State v. Douglass Leon Lyle*, No. E2012–00468–CCA–R3–CD, 2013 WL 1281857, at *12 (Tenn. Crim. App. at Knoxville, Mar. 28, 2013). "Tennessee Rule of Evidence 412 permits [an accused] to introduce specific instances of a victim's sexual behavior only if the prosecutor or victim presents evidence during the trial regarding the victim's sexual behavior." *State v. Mustapha Boutchiche*, No. E2007–00473–CCA–R3–CD, 2009 WL 102949, at *6 (Tenn. Crim. App. at Knoxville, Jan. 12, 2009). In determining whether the contested evidence is admissible, a court must balance "the evidence's probative value against the harm that disclosure will cause to the victim. This balance includes consideration of the harmful effect the proof may have on the victim." Tenn. R. Evid. 412, Advisory Comm'n Cmts. Essentially, "Rule 412 is a rule of relevance and is written as a rule of exclusion." *State v. Brown*, 29 S.W.3d 427, 430 (Tenn. 2000). "As with other evidentiary rulings, the admissibility of the evidence [under Rule 412] rests in the discretion of the trial court." *Sheline*, 955 S.W.2d at 46.

In order for the evidence to be admissible under the rule, the accused generally must file no later than ten days prior to trial a written motion seeking to offer such evidence, and the "motion shall be accompanied by a written offer of proof, describing the specific evidence and the purpose for introducing it." Tenn. R. Evid. 412(d). Tennessee Rule of Evidence 412(c) provides in pertinent part that

> [e]vidence of specific instances of a victim's sexual behavior is inadmissible unless admitted in accordance with the procedures in subdivision (d) of this rule, and the evidence is:
>
> ....
>
> (4) If the sexual behavior was with persons other than the accused,
>
> (i)     to rebut or explain scientific or medical evidence, or
>
> (ii)    to prove or explain the source of semen, injury, disease, or knowledge of sexual matters, or
>
> (iii)   to prove consent if the evidence is of a pattern of sexual behavior so distinctive and so closely resembling the accused's version of the alleged encounter with the victim that it tends to prove that the victim consented to the act charged or behaved in such a manner as to lead the defendant reasonably to believe that the victim consented.

On appeal, the Petitioner contends that one of his "defense theories was that the victim had a history of drug use and prostitution, and that the interaction of [the Petitioner] and the victim was of a commercial nature in which the presence of [the Petitioner's] DNA resulted from consensual activity by the victim." The Petitioner argues that the evidence of an unknown male's sperm on the victim's vaginal swab buttressed this claim and was therefore admissible under Rule 412. The State responds that allowing the Petitioner to adduce proof that the victim had sexual intercourse with another man "is precisely the type of proof that Rule 412 is designed to regulate." Therefore, the State contends that this issue would not have been successful on direct appeal. We agree with the State.

We note that the record reveals the Petitioner never claimed at trial or at the post-conviction hearing that the sexual encounter with the victim was a "commercial transaction" or that the victim was a prostitute; instead, he argued that he and the victim were involved in a relationship and that the sex was consensual. In his post-conviction petition and at the post-conviction hearing, the Petitioner merely raised a general challenge to the exclusion of the unknown male DNA evidence, contending that appellate counsel was ineffective because he was aware of the issue and should have raised it on appeal. A party is bound by the evidentiary theory argued to the post-conviction court and may not change or add theories on appeal. *State v. Alder*, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001). Accordingly, we are

> not required to address issues raised for the first time on appeal. *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996).
>
> We agree with the post-conviction court that the Petitioner has failed to show that he would have been successful on appeal if appellate counsel had raised the issue of the trial court's exclusion of the DNA evidence. We note that although this specific issue has not been addressed in this jurisdiction, another jurisdiction has held that "evidence of unknown male DNA falls squarely into the general prohibition of Rule 412." *Pribie v. State*, 46 N.E.3d 1241, 1247 (Ind. Ct. App. 2015). In other words, the presence of an unknown male's sperm in a victim's vagina is evidence of sexual behavior as defined by Rule 412. *See* Tenn. R. Evid. 412(a). Evidence that the victim may have had sexual intercourse with another man did not negate the fact that the Petitioner's sperm was found on the victim's face, corroborating her statement that the Petitioner ejaculated on her face after vaginally penetrating her. Moreover, the presence of another man's semen on a swab of the victim's vagina had no bearing on whether the victim consented to sexual intercourse with the Petitioner. *Robert Allen Edmonds v. Commonwealth*, No. 2011–SC–000059–MR, 2012 WL 2362429, at *3 (Ky., June 21, 2012). We conclude that the evidence does not preponderate against the post-conviction court's finding that the Petitioner failed to prove that appellate counsel was ineffective.

*Turner*, 2017 WL 928680, at *6–7.

This Court finds that Petitioner has not met his burden of demonstrating that he is entitled to relief on this claim as he has not provided any evidence to diminish the deference owed to the state court's factual findings under § 2254(d). As explained by the state court, although Rule 412 permitted the admission of evidence of a victim's sexual behavior to explain the source of semen, such evidence was irrelevant if the semen itself is not relevant to an issue at trial. *Turner*, 2017 WL 928680. Because the issue here was consent, rather than the source, appellate counsel's decision to omit the issue does not constitute ineffective assistance. Although Petitioner may disagree with the result reached by the state courts, he failed to describe how the state court's adjudication of his claim was anything other than reasonable under the *Strickland* standard. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39–40 (6th Cir. 2007). Based on this Court's review of the

record, the state court's decision was not contrary to and did not involve an unreasonable application of clearly established federal law, and it was not based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. Accordingly, Petitioner is not entitled to relief on this claim.

### B. INVALID SENTENCE

Petitioner argues that his sentence is unconstitutional pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004) [Doc. 1 at 5-6]. Respondent argues that, beyond a general assertion that his sentence is unconstitutional, Petitioner does not explain how the trial court committed a *Blakely* error [Doc. 7 at 11]. This issue was raised on direct appeal [Doc. 5-8 at 622]. In a footnote, the TCCA rejected the claim because Petitioner "was sentenced under the 2005 amendments to the sentencing act, which were passed to remedy the concerns raised by *Blakely*." *Turner*, 2010 WL 3706434, at *3 (*citing State v. Carter,* 254 S.W.3d 335, 342–43 (Tenn. 2008); *State v. Gomez*, 239 S.W.3d 733, 738-41).

The United States Supreme Court has repeatedly held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Furthermore, the Tennessee Supreme Court has held that the State's former sentencing act, one establishing presumptive minimum sentences that required the trial court to enhance sentences based on facts not found by the jury, violated the Sixth Amendment as interpreted by *Blakely* and its progeny. *Gomez*, 239 S.W.3d at 740–41 (citing *Cunningham v. California*, 549 U.S. 270, 275 (2007)). However, Tennessee's revised sentencing act, which applied to Petitioner's sentence in this case, is one in which "[i]mposition of a 'presumptive sentence' in the absence of enhancing and mitigating factors is no longer mandatory." *Gomez*, 239 S.W.3d at 740 n. 8 (citing Tenn. Code Ann. § 40–35–210(c)). The

13

Supreme Court has held that systems such as Tennessee's "permit judges genuinely 'to exercise broad discretion ... within a statutory range'" and "encounter no Sixth Amendment shoal." *Cunningham*, 1594 U.S. at 294 (citing *United States v. Booker*, 543 U.S. 220, 233 (2005)).

As such, the state court's decision was not contrary to Supreme Court precedent and Petitioner's claim is meritless. Because the Supreme Court has expressly acknowledged that Tennessee's amended sentencing act does not violate federal law, and Petitioner was sentenced on January 16, 2009, under the amended sentencing act, there was no *Blakely* error. Thus, this Court finds that Petitioner has not met his burden of demonstrating that he is entitled to relief on this claim as he has not provided any evidence to diminish the deference owed to the state court's factual findings under § 2254(d). Based on this Court's review of the record, the state court's decision was not contrary to and did not involve an unreasonable application of clearly established federal law, and it was not based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. Accordingly, Petitioner is not entitled to relief on this claim.

## V. CONCLUSION

For the reasons set forth above, Petitioner's § 2254 petition [Doc. 1] will be **DENIED** and this action will be **DISMISSED**.

## VI. CERTIFICATE OF APPEALABILITY

The Court must consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether

the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El*, 537 U.S. at 327, 336; *Slack*, 529 U.S. at 484. After reviewing each of Petitioner's claims, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right as to any claims. In view of the law upon which the dismissal on the merits of the claims is based, reasonable jurists could not disagree with the correctness of the Court's resolution of these claim. Because the Court's assessment of Petitioner's claims could not be debated by reasonable jurists, such claims are inadequate to deserve further consideration, and the Court will **DENY** issuance of a COA. *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 327.

ENTER:

                                                                  s/J. RONNIE GREER
                                                   UNITED STATES DISTRICT JUDGE